UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Allan Garon, | ) | |
|                 Plaintiff | ) | |
| | ) | |
| | ) | Case No. 05-4088 |
| | ) | |
| Miller Container Corporation, | ) | |
|                 Defendant | ) | |

**ORDER**

Now pending are the following motions: Plaintiff's Motion for Summary Judgment (#7); Plaintiff's Motion to Strike Defendant's response (#9); Plaintiff's Motion to Amend (#11); Plaintiff's motion to strike Defendant's sur-reply (#14) and Defendant's Motion to Amend/Correct response (#15).

Plaintiff's motion to strike the response is denied. Plaintiff's motion to amend is moot. Plaintiff's motion to strike sur-reply is denied. Defendant's motion to amend/correct is granted. As further explained below, the motion for summary judgment is denied.

**SUMMARY JUDGMENT GENERALLY**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56© of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court's role in deciding the motion is not to sift through

the evidence, pondering the nuances and inconsistencies, and decide whom to believe. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.

The court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, Erdman v. City of Ft. Atkinson, 84 F.3d 960, 961 (7th Cir. 1996); Vukadinovich v. Bd. of Sch. Trustees, 978 F.2d 403, 408 (7th Cir. 1992), cert. denied, 510 U.S. 844 (1993); Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990); DeValk Lincoln-Mercury, Inc. V. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987); Bartman v. Allis Chalmers Corp., 799 F.2d 311, 312 (7th Cir. 1986), cert. denied, 479 U.S. 1092 (1987), and construing any doubts against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Trotter v. Anderson, 417 F.2d 1191 (7th Cir. 1969); Haefling v. United Parcel Serv., Inc., 169 F.3d 494, 497 (7th Cir.1999). The existence of "some alleged factual dispute between the parties," or "some metaphysical doubt," however, does not create a genuine issue of fact. Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 532 (7th Cir.1999). The proper inquiry is whether a rational trier of fact could reasonably find for the party opposing the motion with respect to the particular issue. See, e.g., Jordan v. Summers, 205 F.3d 337, 342 (7th Cir.2000).

**FACTS**

Unless otherwise noted, the following facts are taken from the parties' statements of undisputed facts, the responses thereto, and the evidentiary support for those statements.

Miller Container Corporation ("Miller") manufactures corrugated products such as cardboard boxes. Allan Garon was employed by Miller as a Press Assistant from August of 2001 until his employment was terminated on February 25, 2004. His job was on the production

line, setting up and operating one of the machines.  Garon's wife, Jennifer Garon, was also employed by Miller in the press room.

In November of 2003, Jennifer Garon reported to her supervisor Edgar Eckhardt that she was being sexually harassed by a co-worker.  Eckhardt reported the complaint to Miller's Human Resources Director, Janice Verbeke, who undertook an investigation.  She interviewed Jennifer along with Eckhardt and the Vice President of Operations, Jeff Peterson.  Jennifer reported that the harassment had been going on for 3 months.  Verbecke then interviewed two other employees that Jennifer identified as having witnessed the harassment.  According to Verbecke, both told her during their interviews that they had not seen the things that Jennifer said they had witnessed.  Verbecke interviewed the accused employee, Rolando Gonzalez, who denied the allegations.  Instead, he said he got upset with Jennifer for not doing certain tasks that she said she could not do because of weight restrictions due to her pregnancy.  He said he had been having similar problems with her for about 2 months and that he had reported the problems to Eckhardt.  Eckhardt confirmed that Gonzalez had complained to him about Jennifer's performance and attitude.

Verbecke then met with Jennifer a second time and filled out a "Disciplinary Report" [hereinafter "Report"].  The Report is dated November 20, 2003, and it states that the incident was November 18, 2003.  The Report lists six different levels of discipline;  the first or lowest level, Record of Discussion, is checked.  It summarized the above investigation, commented on an earlier, unrelated incident in which Jennifer had threatened to turn a supervisor in for sexual harassment when he criticized her work performance, and then noted the following:

> After speaking to all that was [sic] involved today we feel that the allegations towards Rolando are incorrect.  Without verifying the allegations that Jennifer is making, we cannot substantiate any further action.  We have however, asked Jennifer to go back to the Finishing Department effective immediately to eliminate any further problems.  She agreed to do this.
>
> I have enclosed a copy of our Sexual Harassment Policy out of our Employee Handbook for Jennifer to read over, so that she fully understands our policy, and the meaning of sexual harassment.  Furthermore, after reading our policy, Jennifer needs to understand that she needs to report any other complaints IMMEDIATELY to the Human Resources office.  She should not wait three months to report a complaint.

[emphasis in original].  Jennifer refused to sign the Report.  There was no guarantee to Mrs. Garon that her press room job would be available at the conclusion of her pregnancy.

On February 24, 2004, Allan Garon submitted a computer-generated letter (prepared using the Word Pad program on a company computer[1]) to the Human Resources Department. In the letter, he complained about how Jennifer's sexual harassment complaint had been handled 3 months earlier, stating that his letter was a "formal complaint of retaliation."  Garon criticized the manner of the investigation, the accuracy of the reported witnesses' statements, and the outcome, believing that the transfer of his wife was not truly based on any concern about her pregnancy but was an inappropriate effort to "settle the situation."

The day he submitted this letter, he was sent home for the day.  The next day, on February 25, 2004, Allan Garon was fired.  Verbecke was involved in the decision to fire him, along with Jeff Peterson and Howard Jarvis.  The reason they gave as the basis for termination of Garon's employment was violation of company policy prohibiting the use of the company production computer during work hours for personal use.  According to Verbecke, misuse of the production computers was grounds for immediate termination under company policy.  Miller claims that Garon had been warned by his supervisor not to use the production computer when he was supposed to be working.  Miller also claims that several employees saw him using the production computer.  Garon disputes that he used the company computer on company time, although he agrees that this is the reason given for the termination of his employment.  He also disputes the company's characterization of this letter as "personal," believing that a letter of this sort is work-related.

---

[1]For purposes of this motion only, Garon concedes that he used the company computer on company time.  See Note 2, p.4 of Plaintiff's Reply.

A Memo from Eric Vanseveren, Chairman, dated September 23, 2002, was posted in various places at the plant.  The subject of the Memo was "Computers."  It is on this memo that Verbecke relied for her understanding of the company policy about computer use.  The Memo in its entirety reads as follows:

> It has come to my attention that a game was installed on one of our new computers in the plant. We have purchased thousands of dollars of new machines, not only to run our new system, but to make your data entry faster and easier.
>
> From this day forward, if any computer is tampered with in any way (someone changing the setup of the computer, or it's [sic] programming, such as screen savers, games, etc.), the responsible party will be subject, up to and including termination,[sic] and the incentive program will be pulled for that whole department for the rest of the year.  Please understand that our system administrator monitors **all** computers, on **all** shifts, and can see what is happening with each individual computer, and the time the computer was altered.
>
> The only application that should be used on those computers is "pde" or the banding software.

## DISCUSSION

Plaintiff's motion for summary judgment is based on her belief that Defendant's agent Verbecke admitted that Alan Garon engaged in protected activity for which he was fired. However, it is not as simple as that.  Verbecke agreed that making a complaint to an employer about conduct that violates Title VII is "protected activity."  Verbecke also admitted that she understood Garon's letter to be a complaint about the handling of his wife's sexual harassment complaint.  What Verbecke did not do, however, is admit that Garon was fired because of the substance of the complaint, which is of course what makes the activity protected in the first place.

Miller's position is that Garon ignored warnings that his conduct - using the company's production computer on work time for anything not related to production matters - violated company policy and that he was fired for that violation and not for the substance of his complaint.  In other words, the employer's position is that Garon would have been fired for typing anything on that computer during his scheduled work hours unless what he typed was directly related to his job activity at the time.

5

Saying that Garon was fired because of the content of the letter - i.e. the "protected activity" itself - and saying that he was fired because the method that he used to prepare the letter violated company policy are two very different things. A company policy that prohibits all use of production computers for any purpose other than production activity is not a violation of Title VII, and an employer's enforcement of that policy does not violate Title VII, at least not without more.

Here, there is clearly a dispute about whether there is "more." Garon has admitted to using the production computer during his work hours to prepare his letter. But the timing of Garon's firing raises eyebrows. The parties also disagree about the applicability of the Memo to the facts in this case: did Garon's use of the computer violated that policy? Garon points out he used Word Pad, a program that was already on the computer, so his conduct actually was not in violation of the Policy set out in the Memo. Miller, on the other hand, relies on the last sentence of the Memo: Garon's use was not one of the specific permitted uses, so it was a violation. There is also a dispute about the specific nature of the prior "warnings" Garon was given - was he told to stop using the computer, or just told he could not use it for personal purposes? Plaintiff has directed the court to nothing - no testimony, no document and no case law - to support his proposition that otherwise-protected activity loses its protection when that activity takes a form that is prohibited by company policy. Here, it is clearly disputed whether that form did violate the company's policy, and it is likewise disputed whether the stated basis for his termination was simply a pretext for retaliation. It would be inappropriate and premature to grant summary judgment on the tenuous basis that forms the foundation of Plaintiff's motion.

Each of these disputes is either a dispute of fact - who said what when and to whom - or it is a dispute about what conclusion might be drawn from the facts. Those are issues that can be resolved only by the jury.

**CONCLUSION**

The motion is therefore denied in its entirety. The final pretrial conference and jury trial remain scheduled for January 17, 2007, and March 12, 2007, respectively. Any motions in limine shall be filed on or before January 3, 2007, with responses thereto due on or before January 10, 2007. The proposed final pretrial order shall be filed on or before January 10, 2007.

ENTER this 31st day of October 2006.

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE